Federal Credit Union v. Elevations Credit Union. Mr. Forge, if you're there, could you please turn on your camera? Great. Thank you. Good morning, Your Honors, and may it please the Court, Timothy Gessoff on behalf of the appellant Elevations Credit Union. I'm hoping to reserve two minutes of my time for rebuttal. This is the trademark case between two credit unions. More specifically, this is a case about the appellee's decision to change its name from Box Elder to Elevate, despite the name Elevations as its trademark since 2008, which was protected by a registration issued by the United States Patent and Trademark Office. Elevate chose to change its name despite knowing about my client that it was a competing credit union in a neighboring state with a registered trademark, despite knowing that the name Elevations was considered one of the top distinctive names in a list that the appellee received, and despite being expressly advised by one of her colleagues that the Elevate name was not available. So are you focusing your argument on the intent component? The intent, not exclusively, Your Honor. Certainly, intent, the subjective intent, it's one of the likelihood of confusion factors. It's one that's particularly unsuited for summary judicial evidence by which one normally has to prove intent, but our view is of the likelihood of confusion factors, which are not exhaustive, all of them weigh in favor and should have a warranted denial of the summary judgment. In the short time after Elevate changed its name, Box Elder changed its name to Elevate, in 2000, not surprisingly, actual confusion started to occur. In fact, one of the instances of actual confusion was one of Elevate's own employees who was trying to apply for a loan and was on the wrong website. He was on my client's website instead of his own employer's website. Notwithstanding all the factual evidence that supported a likelihood of confusion, the district court erred by granting summary judgment, essentially making findings of fact as if it was a bench trial and drawing inferences against Elevate, the non-moving party, which violates Rule 56. We also seek reversal in addition to the liability determination of likelihood of confusion, the two Daubert rulings. The district court excluded our survey expert, which proffered a methodologically sound survey in accordance with the survey authorities that found over 30 percent of actual confusion. The district court erred by excluding that survey, also erred by not excluding the appellee's damages. Is, brief question, is the issue about the admissibility of Hampton moved if we affirmed the grant of summary judgment? It is. That's not a liability issue. That would be a monetary recovery issue. Counsel, I also had a question about what you just stated with the survey expert, just to clarify your argument. Is your argument tied to compliance with Rule 26? In other words, you're suggesting that the report was in compliance with Rule 26, and so we don't go beyond that. You've disclaimed any reliance on the woodworker factors. Correct. We're not arguing whether there was an abuse of discretion under Rule 37 to exclude. Our view is the disclosure was appropriate under Rule 26, that the district court committed a legal error by misapplying and misconstruing the requirements of Rule 26 when it comes to expert disclosures. That's also why we submit that the standard of review on that issue is de novo as opposed to abuse of discretion. Can you clarify just another sequence of your argument? If we disagree with you on the expert testimony and we say it wasn't admissible, then are you conceding that there was no side-by-side comparison that the district court needed to do? He could look at it as he did singly. You see what I'm saying? Your expert did the side-by-side comparison, and if we exclude that, what do we have? I think those are two different issues, Your Honor. Generally, when you look at the similarity of the marks, the first factor, you do not do a side-by-side comparison. You look at how the consumers would look at it in the real world. That's not to say that side-by-side comparisons don't occur, and in this case, our expert found that they did occur when someone would search using their internet browser for Elevate Credit Union. It brought up both parties' website side-by-side. I'm just saying if we exclude that, what does it mean to your argument? I think it's immaterial on the side-by-side, Your Honor. I think if it's not side-by-side, that actually helps us. The rule announced by the president of this court that it's not side-by-side recognizes that if it's side-by-side, someone can look at minute differences and maybe be able to tell them apart. The reality is most of the time, a party is looking at one of the marks with only a recollection of the other marks. That's why similarities in the mark are deemed more important than differences. That's why the additional copying, not just of the name, but of the green and blue logo, which has a motif, a suggestion of height or elevation, that exacerbated the confusion problem and the similarity of the marks. Can you address the number of examples that you have of confusion? There's only four or five, I think. There's five. By our case law, isn't that really considered de minimis? I disagree, Your Honor. I'm asking you what our case law says and for you to compare it to that and tell me how the district court erred when considering it de minimis. I'm not aware of any case that found five instances de minimis. The King of the Mountain case had a handful. I think it was less than five. De minimis is not an objective standard. In this case, the court dismissed the five instances as de minimis without any analysis or application of what constitutes de minimis, what the court should consider and what the fact finder should look at. How long was the mark in use? Certainly five instances over 10 years, that starts to sound like de minimis. Five instances in the short time during the discovery period in this case ... What was that period? That's about 15 months from the time that they started using Elevate, which was the beginning of 2020, to the end of discovery was about 15 months later. We would submit that five instances the court should also consider, which the fact finder would ultimately should consider, is what are the circumstances by which actual confusion might come to light? Actual confusion often is very difficult to find. I submit that most trademark cases don't have any instances. When you buy a refrigerator, when you buy a table, when you buy something that restricts eligibility, as all credit unions do, to being a resident of Box Elder County or one of these two or three other counties, I'm not sure how difficult it's going to be to detect a mistake if I am saying here from Oklahoma City, I want to open an account in Elevate Credit Union. I live in Oklahoma City. I've never been to Box Elder County. I'm not sure why that would be so difficult to detect. The underwriting is going to catch that, as they did, by the way, in every single one of those five examples. Why is it so difficult to detect in light of the restricted eligibility incumbent on both credit unions? What we don't know and what is difficult ... In this case, it came to light because that we learned about that. The instances of actual confusion that don't come to light and are discussed in the Australian Gold versus Hatfield case is more along the lines of initial interest confusion. Somebody goes to the wrong website. They start to poke around. They start going down the steps and they think, wait a minute, this is ... I think I'm at the wrong place. They were actually confused. They recognized their mistake. They backed up and they fixed it. That was a fungible item in Australian Gold. How does Australian Gold help you? For example, how would it work with initial interest confusion? Let's say we say that these marks, let's just say, are not just similar. Let's just say that they're identical. The marketing ... We just say, well, okay, we'll even credit you that Elevation is marketed in Utah. I don't know that there's any evidence that they're marketed in these three particular counties, other than if you're in Box Elber County and you like the University of Utah football team, maybe you saw a football game and you saw an advertisement. Let's just say even the marketing has overlaps. How can there possibly be a single purchase on initial interest confusion here if someone in, say, Salt Lake City wants to seize an Elevate mark and thinks, oh, this is Elevation's, and so I'm going to open an account in Elevate. They're not going to meet the eligibility criteria. They have no connection, proximity to those three counties, and so the underwriting is going to disallow it. I don't understand how initial interest confusion would ever work. A couple of things. One is the membership by both parties does not restrict a geographic location, so there are other ways. Geographic location is one way, but we have 500 members in Utah. How about Elevate? You're talking about initial interest confusion. Well, just on the membership issue, there is crossover because there are multiple ways you can become a member besides ... In Elevate? I believe that's true, too, Your Honor. The initial interest confusion, by definition, initial interest is you caught your mistake before you made a purchase. Before you made the purchase, you or the company you're dealing with says enough to clue you in that I'm with the wrong company. The reason I'm at the wrong website is because of the similarity in the trademark. I was actually confused, but I caught it. Whether they actually made a purchase, that would be a damages issue. That would go to actual confusion for damages, but on a liability, and this is what Australian Hatfield makes clear, is initial confusion is just as actionable as actual confusion. That would lead to a misplaced sale. It doesn't matter whether it's forward confusion, reverse confusion, initial confusion. The damage to the trademark occurs when the similarity from the junior user's mark causes the confusion. That the person realized it for whatever reason before they closed the sale doesn't minimize the damage to the mark itself. The irreparable harm, which is presumed by the confusion, has occurred. That might impact the damages if there was no misplaced sale, but that's not a liability issue. The liability issue is unaffected regardless of when the mistake was cured. With that, Your Honour, I'd like to reserve the remainder of my time for rebuttal. Thank you. We will start with you. Okay, thank you. Thank you. Good morning, Your Honours. May it please the Court, my name is Nicole Forge and I represent Elevate Federal Credit Union, the Apple League. I apologize for being on Zoom this morning, but my flight was canceled last night due to your big snowstorm. As I said, I represent the Elevate Federal Credit Union, or EFCU. EFCU is a small, local Utah credit union that has just three branches in three northern rural counties. As the appellant noted, it used to be called Box Elder County Credit Union, and when it decided to open one more, its third branch in another county, it decided to change its name to reflect that. After a long period of due diligence and investigation, and after finding no conflicting marks, it selected the name Elevate Federal Credit Union and publicly announced that name in 2019 May. EFCU's membership and market area is limited to Box Elder, Cache, and Ridge counties in Colorado. Elevate Federal Credit Union is a Colorado state charter credit union with branches in a handful of Colorado counties in northern Colorado. Its membership and operations are largely tied to those counties, and it prominently markets itself as a Colorado credit union serving the people of Colorado. The Court, in this case, evaluated the six factors of likelihood of confusion, and found that every single one of them favored EFCU, and in most cases, four out of the six factors, in fact, weighed heavily, strongly, or substantially in favor of EFCU, and that confusion was highly unlikely. Likelihood of confusion is amenable to summary judgment in such cases, and is considered a factual determination that's reviewed for clear error, and in this case, it's not even a close call. Well, can I test you on that as far as some of these factors? For example, the similarity of the marks. Don't you think that if we were to present your both sides briefs to all of the people in the courtroom today and say, do you think that the similarities would outweigh the differences, or do you think that the differences would outweigh the similarities, I bet you it wouldn't be unanimous. I bet you some people would say, oh, you know, Elevate is similar, but, you know, or some people would say, you know, well, Elevation is the nominalization of the verb, Elevate, and, you know, a noun is different than a verb. Others would say, well, they both signify, you know, height. In other words, doesn't that supplant the role of the fact finder? Shouldn't the district court have said, viewing the evidence of the like most favorable to Elevation's, a fact finder could have found that the similarities of the mark outweighed the differences? No, Your Honor. I think, first of all, that we don't do this as a side-by-side comparison. You don't just get briefs and look at these marks and compare them together. That's not allowed. I think that the court also looked at the marks carefully and that it is well in the discretion of the court to do so and to decide this issue of similarity without any sort of expert advice or whatnot. That the court looks at the few similarities, the minor similarities, which are the beginning part of each dominant word of these marks and found that those similarities were strongly outweighed by the dissimilarities. And that's you alluded to in some of these other factors. And when you have this heightened standard of care, you don't have initial interest confusion. You don't have issues with similarity. It makes it very difficult to find that the marks are confusingly similar because the parties are sophisticated and don't make these decisions based on wins. And Elevation itself argued this in order to get the very registration that it's now asserting against us when it had an initial refusal because of a prior mark for Elevation partners for the same types of financial services. And it said, consumers take careful consideration when engaging companies in activities relating to their money and finances. In fact, consumers tend to take great care with these types of decisions. They are not impulse decisions. Thus, when comparing marks in their entireties as to appearance, sound, connotation, and commercial impression, a consumer is unlikely to assume that similar but not identical marks indicate the same source or origin of the services in question. So, to a consumer interested in banking and financial matters, Elevation said, Elevation and Elevation partners give a distinctly different commercial impression. And the court went through all of these similarities, dissimilarities, which were many, and noted that they far outweigh any minor similarities in the marks. And there are also... Yes, go ahead. Sorry to interrupt. I just wonder, you know, we're looking at this de novo now, and I wonder if the district court gave the similarities more weight than the differences, which I think it was required to do. And there were an awful lot of similarities here. To me, the differences the district court was looking at, at least, in my mind, were exceedingly minor, talking about font, you know, tiny differences in font style, and the sort of thing that... It's just not that big a deal. And I wonder if that didn't... The district court didn't weigh the differences more heavily, which we can't do. Understood, Your Honor. But first of all, I would say that I don't believe that this is a de novo review. Again, the Hart-Strings case in the Tenth Circuit says... Well, all of the cases in the Tenth Circuit say that likelihood of confusion is a factual determination that's reviewed for clear error. And the Hart-Springs case was a summary judgment decision where the court reviewed the likelihood of confusion decision for clear error, not de novo. There are a couple of cases that the other side has sided to, arguing the opposite. But all those cases said was, this is a summary judgment motion in review for de novo. That would actually end up raising the issue of likelihood of confusion. Judge Morris has a question. I'm trying. I mean, I think the Hart... What is the Hart-Springs? Hart-Springs. Hart-Springs seems to me to be an outlier, and I'm not aware of a summary judgment case where... I don't know how you could even contend clear error applies. The district court doesn't make findings of facts in a summary judgment decision. It finds there are no genuine issues of material fact, but it does not make fact findings. So I'm not sure you can rely on that case. It seems to be a bit of an outlier. Not clear, anybody? I think you're... According to McCarthy on trademarks, the clear majority of circuits follow the rule that likelihood of confusion is an issue of fact reviewed on appeal under a deferential clearly erroneous standard of review. That includes the Third Circuit, which... On a summary judgment? Summary judgment? Yes. Okay. Yes, Your Honor. In the Third Circuit, the suspended case 542F3-1007 says that likelihood of confusion is a factual question on summary judgment for a trial. The Ninth Circuit also says so. The Fifth Circuit also says so, for a variety of reasons. But that, Your Honor, is why we believe that Hart-Springs is not an outlier, that it is proper standard of review, clearly erroneous when you're dealing with likelihood of confusion issues. As far as actual confusion goes, first of all, the survey from this report was excluded as a sanction and also under Rule 702, properly so, and those reviewed under abusive discretion standard. These four or five cases that we talk about, first of all, none of them resulted in any consumer transaction, which makes them not actual confusion cases. As the court pointed out also, that with the exception of just one instance, which was in February of 2021, nearly two years ago, each of the claimed instances occurred right after EFCU's rebrand, and the case law is clear that some confusion is to be expected right after a case, and that evidence of confusion occurring, quote, initially upon the creating of a potentially confusing mark is not itself sufficient to establish the likelihood of confusion. So that right there wipes out four of the five instances relied upon by elevations, and they are, these cases are certainly de minimis by any possible standard. They claim over a billion dollars in loan transactions, 700,000 in cash transactions, tens of thousands of dollars, maybe one case that didn't result right at the rebrand time, and that is just de facto de minimis confusion. As for initial interest, yes, Your Honor. I am sorry, but I wanted to just ask you sort of a methodological question. Let's say hypothetically that we say Hartsfield is not an outlier, we're going to apply clear error, and we find maybe that one of the factors that there was clear error. Let's say we say, well, the similarities, you know, the differences, it is clear error to say that the similarities are outweighed by the differences. Any of the six factors, hypothetically. Well, now we really no longer know how the district court would have come out had the district court applied five factors one way and one of the factors the other way, or if we applied an over-review, obviously, if we applied an over-review and come out differently than the district court did on the six factors. Should we decide likelihood of confusion in a vacuum based on, okay, the similarity of marks, that cuts one way. The form of the three types of confusion, direct or forward confusion, reverse confusion, and initial interest confusion, and decide as a practical matter, looking at this particular context with all of these factors, is it, could a reasonable fact finder conclude that, or find that there is initial interest confusion, or that there could be, given the sort of I think so, your honor. First of all, this is not an initial interest confusion case. It was not alleged or pled, and it was not tested, and it also, as you noted, the Australian Gold case clearly states that it only applies to low cost goods, not the kind of high sophistication, high degree of care services that are at issue in this case, so there isn't initial interest confusion here. As Judge Kimball said, that's not available. As for the other types, we have six factors. None of them are dispositive, but the court found all six. Well, yeah, but my question is, let's say we disagree with you. I mean, it's easy if we say, okay, all six factors cut one way. Well, you know, there's no question about the result, but let's just say hypothetically that we disagree with you about that, disagree with the district court. Some of the factors cut one way, some of the factors cut another way. Do we say, okay, well, we don't know how a fact finder would weigh those factors that cut in different directions, or do we apply those within the umbrella of the, whatever, forward confusion and reverse confusion, whatever the forms of confusion that we consider. It's a methodological question. I think here, I hope so. Again, correct me if I'm misunderstanding your question, but I think, first of all, one of the reasons that we have this clear majority saying that likelihood of confusion is a fact issue that's reviewed under a clearly erroneous standard is because these really are, at their heart, factual determinations that courts weigh or make on summary judgment, and yet they make them all the time on summary judgment, and the district court is uniquely positioned to decide those issues looking at the cases as a whole and the evidence as a whole. I think if the court decides that one factor such as similarity of the marks maybe is a closer call, well, we still have five factors, again, where the court said that they weigh heavily, strongly, substantially in favor of this MESCQ, so I don't think that is a basis for reversal, even if one of the factors you say, well, that might be a close call, the totality of these factors is what's at issue, and it's the district court that looked at all of the evidence, including all the undisputed evidence, and decided how much of it is probative, how much of it was contradicted, how much of it would even be looked at. Some of the evidence that the counsel cites today, for example, saying they should have had inferences drawn in their favor was excluded by the court, and others of it was directly contradicted by the evidence in the record, like the stuff about Ms. Parsons' email and the big competitors, which elevations said itself acknowledged they were not competitors. Judge Warren. Before your time's up here, and I'm going to go back to this whole clearly erroneous issue, because I think your argument may depend on it, and I think it's flawed, and I guess I would like to ask you, if we disagree with you, and this is a de novo review of summary judgment, does that change your argument? Because your brief seemed to focus on this issue, these as fact findings. And I want to say that your argument that this is a fact issue, and the courts have said it's a fact issue, that's absolutely right. Fact issues are decided at summary judgment stage all the time, and that's the point. You apply the facts to the law and decide if any of those facts are material and if there's anything controverted. But when we get to the appellate stage, our standard of review is de novo. And so I guess with your brief focusing as it did on what I think may be an improper standard of review, I wonder if that changes your argument. No, Your Honor. I think it's clear from the determination by the district court, this is not a close call. These factors all weigh so strongly in favor of EFCU. Certainly, the primary factor, that is not the case that the comparison factor weighs strongly in favor of EFCU. I understand that there's some concerns about the stability of the district. That's the most important factor, and the case law has said so. Understood. But also keep in mind things like the high degree of care that elevations has conceded is the case, and has said that people looking for these types of services would be highly unlikely to be confused by these things. And so that sort of overlays all of these factors, including the similarity of the marks where they have conceded that even between two marks, elevations and elevation partners, where partners is disclaimed, they said absolutely there would be no confusion here because our clients are so sophisticated and they exercise such a high degree of care that it doesn't matter. And now they're arguing that elevations is so similar to elevate that those sophisticated consumers would be absolutely confused, despite the lack of any such confusion or any consumer satisfaction. Those were different products they were comparing at that time. Financial products, not services. And there are many, many trademark registrations that have been approved by the USPTO for elevate and elevations that have identical services, and they all coexist without confusion, despite being identical services and potentially overlapping markets with the same similarities that elevations is complaining about here. All right. Thank you. Thank you. Thank you. OK. Yeah. Thank you. With the court's permission, Your Honor, as a standard of review issue and the arguments we've had today discussing all of these conflicting facts, some way in our favor, some not, both the district court and Appellee's counsel treated this as if it was a bench trial. This was a summary judgment ruling. Likelihood of confusion absolutely is an extremely fact-intensive issue at trial. The only way you can grant summary judgment on such a highly fact-intensive issue is if you can find under Rule 56 that there are no disputed issues of material fact. This record is replete with disputed issues. On top of which, the district judge drew inferences against the non-moving party, which was also in error. I agree with Judge Moritz that the only way that Appellee's can stay in this game is if they convince this court to apply a clearly erroneous standard, which would absolutely be the case. I didn't say that that was my view. I was just asking what their view was. I didn't mean to put words in your mouth, Your Honor. I guess I would question you about, yes, there are a number of controverted facts, but are they material? My view of what the district court did was to say, all right, we've got these six factors, and four of these six weigh heavily in favor of elevation. And so as a matter of law, essentially, it found, and it can do so at summary judgment level. It can do so if it essentially concludes that no reasonable jury could find in our favor. That simply cannot stand. When you look at the factors, even on the intent, the district court was dismissive of the facts and drew inferences against what would be a reasonable inference in our favor, that there was an intent to trade off of a very well-known and distinctive mark that my client has built. The Lanham Act does not distinguish between these flavors of confusion. I want to make that clear. Initial interest, reverse, or forward are commentator flavors that we've added, but the Lanham Act doesn't care. Australian Gold doesn't care. I see my time is up. I appreciate it. The court has no further questions. I appreciate your time. Well, you've kind of aroused my curiosity with your last comment. So I understand your argument is you either violate the Lanham Act or you don't. But what has been described as initial interest confusion, does that adequately fit at least one of your theories of liability, initial interest confusion? Absolutely. And in many cases, all the flavors are at place. All right. So initial interest confusion is one. What about forward confusion? Yes. That's where somebody knew of our client's mark. I know what it is. You told us what it is. Sorry, I didn't mean to be mean. Are you alleging forward interest confusion? Yes. Every person, primarily in Utah, that encounters the Applebee's mark but was aware of our mark and thinks that there's a relationship, we have 41,000. I'm really not trying to be vain or anything. Yes. We're out of time. And I just wanted to know, you know, she said you're not alleging initial interest confusion. I just wanted to know. We didn't. So are you alleging reverse confusion? We didn't limit our allegation to any particular kind of confusion. We know that there's confusion in all directions and in initial interest. Okay. But it's not my practice to specify because it's common that you have multiple types of confusion within one case. I get that. Yeah. I totally understand your argument. I just want to know if what has been described as these three theories of confusion, if those are the same theories that you are prosecuting in this case. Yes, and we believe that. Yes. That's all I want to know. Yes. Yes, Your Honor. Thanks. Sorry. No, it's okay. I don't mean to apologize. I just wasn't asking you very well. Very well presented by both sides. This matter is submitted. Thank you for your time.